1  Milord A. Keshishian, SBN 197835
   milord@milordlaw.com
2  Kirstin Jensvold-Rumage, SBN 345916
   kirstin@milordlaw.com
3  MILORD LAW GROUP P.C.
   333 South Hope Street, Suite 4025
4  Los Angeles, CA 90071
   Tel: (310) 226-7878
5  Fax: (310) 226-7879
6
   Attorneys for Plaintiffs TIW Holdings LLC
7  And Puff Labs, LLC

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | TIW Holdings LLC, a Nevada limited        | CASE NO.: 23-7980
   | liability company; and, Puff Labs, LLC, a |
12 | Nevada limited liability company;         | COMPLAINT FOR DAMAGES:
13 |                                           |
   |            Plaintiffs,                    | 1. Fraudulent Trademark Registrations
14 |        v.                                 |    15 U.S.C. § 1120
15 |                                           | 2. Cancel Trademark Registrations
   | Hotbox Farms LLC, an Oregon limited       |    15 U.S.C. § 1119
16 | liability company; and DOES 1-10;         | 3. Declaratory Judgment Of Non-
17 |            Defendant.                     |    Infringement, Invalidity,
18 |                                           |    Unenforceability
19 |                                           | JURY TRIAL DEMANDED
20 |                                           |

21

22

23

24

25

26

27

28

Plaintiffs TIW Holdings LLC ("TIW") and Puff Labs, LLC ("Puff Labs") (collectively "Puff TIW" or "Plaintiffs") sue defendant Hotbox Farms LLC ("HFL" or "Defendant"), and DOES 1-10; and allege:

## INTRODUCTION

1.      This is an action to stop an Oregon-based marijuana company from trademark bullying and enforcing an invalid trademark registration it knows was obtained by fraud on the United States Patent & Trademark Office ("USPTO").  With full knowledge that marijuana products are not eligible for federal trademark registration because they are an unlawful controlled substance under federal law and cannot be sold interstate, Defendant filed an application to fraudulently register the Hotbox Farms trademark in association with smoking paraphernalia it does not actually manufacture or sell.  To perpetrate its fraud on the USPTO, Defendant merely took commercially available BIC® lighters and slapped on woefully improper "HOTBOX FARMS EASTERN OREGON" stickers to submit as a specimen of use in commerce, falsely declaring to the USPTO that the mark was "printed across the front of each lighter," as shown below:



2.      Despite Defendant's knowledge of the invalidity of its fraudulently registered mark, it sent a cease-and-desist letter on September 8, 2023, to Plaintiffs

COMPLAINT – Jury Demand

threatening litigation to "seek injunctive relief and recover monetary damages." A copy of the correspondence is attached as EXHIBIT A. Plaintiffs are thus forced to turn to the Court to protect their rights and business and to prevent Defendant's illicit conduct, including sending baseless cease-and-desist letters and threats of lawsuits arising from a fraudulently obtained trademark registration.

## JURISDICTION

3.     These causes of action arise under the provisions of the Lanham Act (15 U.S.C. §§ 1051-1127) and California law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1114, 1119, 1120, and 1125. This Court has jurisdiction under the Federal Declaratory Judgment Act 28 U.S.C. §§ 2201-02. This Court has subject matter jurisdiction over the state causes of action under 28 U.S.C. § 1367(a) because they are so related to claims within the original jurisdiction of this Court under the trademark and unfair competition laws of the United States that they form part of the same case or controversy.

4.     Specifically, at all relevant times, Defendant has:

(a) advertised products sold under the purported "Hotbox Farms" mark in this District, including solicited articles in the Los Angeles Times newspaper and on the Fox 11 Los Angeles website promoting the purported "Hotbox Farms" mark at issue in the cease-and-desist letter, thus Defendant's trademark building activities in California and this District are integral to the scope of the rights that are to be declared in this case;

(b) operated fully interactive retail ecommerce websites and storefronts that solicit and engage in regular business in California and this District, deriving a substantial volume—in dollars and units—and percentage of their business and revenue from sales to California and this District of products bearing the purported "Hotbox Farms" mark;

COMPLAINT – Jury Demand

(c) placed products bearing the purported "Hotbox Farms" mark in the stream of commerce and exploited the benefits of the California market because they actively conducted transactions with California customers, accepted payments from those customers, and imported and shipped products bearing the purported "Hotbox Farms" mark into California and this District;

(d) engaged in contractual relations and created continuing relationships and obligations with California-based celebrities to market, sell, and distribute products bearing the purported "Hotbox Farms" mark in California and this District.

5.    Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) because a substantial part of the events giving rise to the action occurred in this District, including Hotbox Farms has, among other acts, marketed and sold in this District products bearing the purported "Hotbox Farms" mark and because the Defendant's actions in fraudulently registering a trademark and unfair competition have resulted in damages to TIW and Puff in this District.

## THE PARTIES

6.    Plaintiff TIW is currently a limited liability company organized and existing under the laws of the State of Nevada, with a place of business in this District.  Plaintiff TIW is a holding company and owner of the HOTBOX trademarks.

7.    Plaintiff Puff Labs is currently a limited liability company organized and existing under the laws of the State of Nevada, with a place of business in this District, and a licensee of the HOTBOX from TIW.

8.    Hotbox Farms is currently a limited liability company organized and existing under the laws of the State of Oregon, with a place of business at 325 NE Goodfellow, Ontario, OR 97914.

9.    Puff TIW is unaware of the true names and capacities of DOES 1 through

COMPLAINT – Jury Demand

10, inclusive, and therefore sues said Defendants by such fictitious names. Puff TIW will ask leave of Court to amend this Complaint to state the true names and capacities of the Defendant sued as DOES when the same are ascertained. Puff TIW is informed and believes, and based thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Puff TIW's damages, as herein alleged, were proximately caused by their conduct.

10.    Puff TIW is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Puff TIW's rights and the damages to Puff TIW proximately caused thereby.

## FACTUAL BACKGROUND

11.    Puff began using the HOTBOX marks listed below on electronic vaporizers and e-liquid products in June of 2022, licensed from TIW.

12.    TIW has three trademark pending trademark applications filed with the USPTO as noted below:

| TRADEMARK | SERIAL NO. | FILING DATE | CLASS/GOODS |
|-----------|-----------|-------------|-------------|
| HOTBOX | 97553218 | 08-17-2022 | IC 003: Electronic cigarettes; Electronic cigarettes for use as an alternative to traditional cigarettes; Flavorings, other than essential oils, for use in electronic cigarettes; Liquid nicotine solutions for use in electronic cigarettes; Mechanical electronic cigarettes; E-juice and e-liquid products, namely, electronic cigarette liquid (e-liquid) comprised of flavorings in liquid |

**COMPLAINT – Jury Demand**

form, other than essential oils, used to refill electronic cigarette cartridges

IC 005: Dietary pet supplements in the form of pet treats; Dietary supplements; Dietary supplements for animals; Dietary supplements for promoting sleep, enhancing energy, relieving pain and enhancing focus; Nutritional supplements; Nutritional supplements for promoting sleep, enhancing energy, relieving pain and enhancing focus; Pain relief medication; Topical analgesics; Topical gel for medical and therapeutic treatment of aches and pains; Dietary supplemental drinks; Herbal drinks used to aid in sleep and relaxation; Herbal tinctures for medical purposes; Herbal supplements for promoting sleep, enhancing energy, relieving pain and enhancing focus; Non-medicated additives for animal feed for use as nutritional supplements; Powdered nutritional supplement drink mix; Preparation for the relief of pain; all of the foregoing containing CBD solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis

IC 034: Electronic cigarettes; Electronic cigarettes for use as an alternative to traditional cigarettes; Flavorings, other than essential oils, for use in electronic cigarettes; Liquid nicotine solutions for use in electronic cigarettes; Mechanical electronic cigarettes; E-juice and e-liquid products, namely, electronic cigarette liquid (e-liquid) comprised of flavorings in liquid form, other than essential oils, used to refill electronic cigarette cartridges

COMPLAINT – Jury Demand

| | | | |
|---|---|---|---|
| | | | IC 035: Online retail store services featuring oils, beauty serums, lotions, creams, roll-ons, salves, hemp oil extracts, dietary supplements, dietary supplements for dogs, dog treats, and gummies; all of the foregoing are comprised of hemp containing less than 0.3 percent delta-9 tetrahydrocannabinol (THC) on a dry weight basis; Online Retail stores featuring topicals, namely, non-medicated salves, lotions, creams, and roll-ons, all for topical use, any CBD in the goods being featured or provided in the aforementioned services being solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis; Retail store services featuring oils, beauty serums, lotions, creams, roll-ons, salves, hemp oil extracts, dietary supplements, dietary supplements for dogs, dog treats, and gummies; all of the foregoing are comprised of hemp containing less than 0.3 percent delta-9 tetrahydrocannabinol (THC) on a dry weight basis; Retail stores featuring topicals, namely, non-medicated salves, lotions, creams, and roll-ons, all for topical use, any CBD in the goods being featured or provided in the aforementioned services being solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis |
| HOTBOX 7500 | 97553220 | 08-17-2022 | Same Goods / Services as listed above. |
| PUFF HOTBOX 7500 | 97553283 | 08-17-2022 | Same Goods / Services as listed above |

**COMPLAINT – Jury Demand**

13.     Puff TIW's HOTBOX common law trademarks and service marks will collectively be referred to as the "HOTBOX Marks."

14.     As a result of Puff TIW's extensive advertising, promotion, sales, and continuous use, the HOTBOX Marks have acquired valuable goodwill among consumers and in the industry.

## DEFENDANT'S MISCONDUCT

15.     According to the USPTO's records, HFL is the recorded owner of Registration No. 7,062,602 (the "`602 Registration"), with an Intent to Use ("ITU") application filing date of October 28, 2020, for the following International Classes ("IC") and alleged goods/services and purported dates of use:

a.  IC 016: Stickers. First Use: 2016-10-31. First Use In Commerce: 2016-10-31

b.  IC 021: Insulating sleeve holder for beverage cups. First Use: 2018-06-30. First Use In Commerce: 2018-06-30

c.  IC 025: Hats; shirts; sweatshirts. First Use: 2016-10-31. First Use In Commerce: 2016-10-31

d.  IC 026: Buttons. First Use: 2018-06-30. First Use In Commerce: 2018-06-30

e.  IC 034: Lighters for smokers. First Use: 2016-10-31. First Use In Commerce: 2016-10-31

f.  IC 035: retail store services featuring hats, shirts, sweatshirts, buttons, stickers, beverage cozies, and lighters. First Use: 2016-10-31. First Use In Commerce: 2016-10-31

16.     When HFL filed the application that issued as the `620 registration, HFL stated that it had a *bona fide* intention to use "HOTBOX FARMS" in commerce on or in connection with lighters for smokers in IC 34 and retail store services featuring hats, shirts, sweatshirts, buttons, stickers, beverage cozies, and lighters in IC 35.

COMPLAINT – Jury Demand

17.    In filing the application, HFL acknowledged to the USPTO that "willful false statements, and the like, may jeopardize the validity of the application or any resulting registration . . . ."

18.    On June 29, 2021, the USPTO issued a notice of allowance, but instead of filing a statement of use, HFL filed two extensions of time to file the statement of use, specifically on December 28, 2021, and June 24, 2022.

19.    Finally, on October 27, 2022, HFL filed its statement of use for the various classes of goods/services, but with dates that inexplicably preceded the Intent to Use application's filing date and the specimens were fabricated by applying ornamental stickers or drawings to products originating from third parties, not HFL.  Further, the specimens purporting to show use of the mark do not match the drawing of the mark, i.e. "HOTBOX FARMS EASTERN OREGON" instead of "HOTBOX FARMS."

20.    Upon information and belief, HFL did not possess a *bona fide* intention to use "HOTBOX FARMS" in commerce on or in connection with each and every one of the goods listed in the application or did not provide the retail services for each of the items listed when HFL filed the application on October 28, 2020.

21.    Upon information and belief, HFL was not using "HOTBOX FARMS" in commerce to identify each and every item listed in the Notice of Allowance when HFL submitted the Statement of Use to the PTO on October 27, 2002, and, consequently, HFL did not begin using "HOTBOX FARMS" in commerce to identify each and every item listed in the Notice of Allowance at least as early as the dates provided, which are listed in Paragraph 15 above.

22.    In the Declaration, HFL, by and through its attorney, declared under the penalty of perjury pursuant to 18 U.S.C. § 1001, that "the mark is in use in commerce on or in connection with all the goods/services in the application or notice of allowance"; "a(n) photograph of a display tray of lighters with the HOTBOX FARMS mark printed across the front of each lighter"; and "[t]o the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the

1   allegations and other factual contentions made above have evidentiary support.”

2       23.    Upon information and belief, in truth and in fact, the mark was not in use in

3   commerce on or in connection with all the goods/services listed in the application or

4   notice of allowance and the purported HOTBOX FARMS mark was not printed across

5   the front of each lighter.  HFL was not the source or origin of any lighters and merely

6   slapped on a sticker with an ornamental depiction of a marijuana leaf encircled with

7   “HOTBOX FARMS EASTERN OREGON” onto third-party BIC® lighters—without

8   any printing on the lighters, which could not function as a designation of source because

9   the source was third-party BIC®.

10      24.    On December 19, 2022, the USPTO sent a Nonfinal Office Action refusing

11  registration because the “specimens of record is merely a decorative or ornamental

12  feature of the goods and, thus, does not function as a trademark to indicate the source of

13  applicant’s goods and to identify and distinguish them from others,” under Trademark

14  Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127.

15      25.    The Office Action continued: “In this case, the mark as shown on the

16  specimens would be perceived as merely a decorative or ornamental feature of the goods.

17  Specifically, the submitted specimens for stickers, sleeve holders, buttons and lighters

18  show the applied-for mark, HOTBOX FARMS, located directly on the front portion of

19  the goods, where ornamental elements often appear.  See TMEP §1202.03(a), (b).

20  Furthermore, the mark is displayed in a relatively large size on the goods such that it

21  dominates the overall appearance of the goods.”

22      26.    The Office Action refused the specimen for IC 25, stating: “Additionally, the

23  submitted specimen for clothing shows the applied-for mark, HOTBOX FARMS, located

24  on the pocket or breast area of the clothing where trademarks often appear. However, the

25  tag inside the clothing shows another mark which appears to be ‘PORT & COMPANY.’

26  See https://www.portandcompany.com/p/3147_Charcoal#?doScrollToGrid=true.  As

27  such, the other mark shown on the tag undermines the premise that HOTBOX FARMS

28  functions as a source-indicator.”

27.     The Office Action further stated that the applied for mark "is used in a merely decorative manner that would be perceived by consumers as having little or no particular source-identifying significance.  Therefore, consumers would view the applied-for mark as a decorative or ornamental feature of the goods, rather than as a trademark to indicate the source of applicant's goods and to distinguish them from others."  The examiner gave HFL four options to overcome the refusal to register, and are summarized as follows: i) claim the mark has acquired distinctiveness under § 2(f) of the Lanham Act by submitting sufficient evidence in support that the device is recognized by consumers as a trademark; or, ii) submitting evidence that establishes that the public would recognize applicant as the secondary source of or sponsorship for the goods; or, iii) amend the application to the supplemental register; or, iv) submitting a substitute specimen showing a non-ornamental trademark use.

28.     On March 9, 2023, instead of responding to the substance of the Office Action, HFL argued that because the "refusal does not apply to the services in class 35 of the application," and because "the examining attorney has accepted the specimen of use and statement of use submitted by the applicant with respect to class 35," thus "the proposed mark serves as an identifier of secondary source, and the matter is registrable on the Principal Register."

29.     But HFL withheld from the examining attorney the relevant information that HFL had not in fact provided the services by selling all the products listed in IC 35 and that the primary service provided by HFL was for the sale of controlled substances prohibited by federal law, and HFL knew and was aware that marks used in connection with marijuana and marijuana paraphernalia are not lawfully used in commerce under the Lanham Act when it filed the application that would become the `602 Registration.

30.     HFL was fully aware that the Controlled Substances Act "makes it unlawful to sell, offer for sale, or use any facility of interstate commerce to transport drug paraphernalia, i. e., 'any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing,

-11-
**COMPLAINT – Jury Demand**

producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under [the CSA],'" and that the marijuana and marijuana paraphernalia it sells could not qualify for registration under IC 35, otherwise it would not have filed for state trademark registrations instead for its marijuana products.  Indeed, HFL's website does not list any of the products listed in the application that issued as the `602 Registration, instead only listing its marijuana products:



31.    Puff TIW has no adequate remedy at law and is and will be irreparably harmed unless Defendant's conduct is preliminarily and/or permanently enjoined.

### FIRST CAUSE OF ACTION
### Damages From Fraudulent U.S. Trademark Registrations (15 U.S.C. § 1120)

32.    Puff TIW refers to the allegations of Paragraphs 1 through 31 of this Complaint and incorporates them as though fully set forth herein.

33.    Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the

USPTO of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." The Ninth Circuit has held that "[a]ny person who has a reasonable interest to be protected against the use of fraudulent statements in procuring a trademark registration—such as one who attempts to sell, market, license, or commercially exploit any product with the same name as the fraudulently procured trademark—may maintain a suit under Section 38 [15 U.S.C. § 1120]." *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993).

34. Defendant procured the `602 Registration for HOTBOX FARMS by false or fraudulent declarations or representations. Specifically, Defendant falsely declared to the USPTO that the "mark is in use in commerce" and/or that they were "entitled to use the mark in commerce" on all goods/services listed in the application and statement of use when it knew that the mark had not been used on all the goods/services. Defendant also falsely presented to the USPTO that it was entitled to registration of the ornamental designs by relying on the services listed in IC 35, while Defendant knew that it did not provide services selling all the listed items in the application and that its primary business could not qualify for federal trademark application because it was for the sale of marijuana and marijuana paraphernalia in violation of the Controlled Substances Act, which it withheld from the USPTO examining attorney. Further, as detailed above, Defendant submitted doctored specimens that it knew were from third parties by applying the purported mark thereon and misrepresenting to the USPTO that Defendant was the source of those goods.

35. Had the USPTO not relied on Defendant's material misrepresentations, it would not have allowed registration of the purported HOTBOX FARMS trademark.

36. As a result of these false and/or fraudulent declarations and/or representations made to the USPTO, Defendant was able to wrongfully procure the `602 Registration.

37. As a result of the illicitly registered trademarks, which registrations were

**COMPLAINT – Jury Demand**

secured through the fraudulent scheme outlined above, Puff TIW has suffered damages in
that Defendant is now attempting to enforce its purported exclusive rights to prevent Puff
TIW's use of the HOTBOX Marks on their products to prevent fair competition and for
harassment of Puff TIW's supplier and customers.

38.    By virtue of Defendant' ownership of the `602 Registration, Defendant
enjoys a false aura of exclusive rights in "HOTBOX FARMS" related marks, which it
used to threaten to disrupt Puff TIW's United States business operations.  Puff TIW has
suffered damages based on at least diverted staff time and marketing expenses to counter
Defendant's use of the trademark registration to threaten Puff TIW's business.  Puff TIW
has incurred monetary damages due to lost sales as a proximate result of Defendant's
false or fraudulent federal registrations, which it uses to threaten suppliers and customers.

39.    Through the procurement of the federal `602 Registration by said false and
fraudulent declarations and representations, Defendant is liable to Puff TIW for damages
sustained in consequence thereof under 15 U.S.C. § 1120, which damages Puff TIW has
suffered and is continuing to suffer.

## SECOND CAUSE OF ACTION
### Cancellation of U.S. Trademark Registrations (15 U.S.C. § 1119)

40.    Puff TIW refers to the allegations of Paragraphs 1 through 39 of this
Complaint and incorporates them as though fully set forth herein.

41.    Section 1119 of the Lanham Act provides that in "any action involving a
registered mark the court may determine the right to registration, order the cancelation of
registrations, in whole or in part, restore canceled registrations, and otherwise rectify the
register with respect to the registrations of any party to the action."  15 U.S.C. § 1119.

42.    Defendant's `602 Registration must be cancelled for all classes because
Defendant never made use in commerce the HOTBOX FARMS mark with all of the
listed goods/services, and it knew all statements otherwise were false when made.

43.    As an alternate and separate reason, the `602 Registration must be cancelled

because Defendant only made ornamental use of the mark with the goods/services and it did not function as a source identifier.

44.     As yet another alternate and separate reason, the `602 Registration must be cancelled because the specimens it submitted as part of its statement of use were fabricated and stickers affixed to products of third parties and the HOTBOX FARMS mark was not "printed" on the products as falsely declared to mislead and deceive the USPTO, which statement was relied upon by the USPTO to issue the registration, and Defendant knew the statements were false when made.  At a minimum, the statements were made and the specimens submitted with reckless disregard for the truth of the statement and the authenticity of the specimens because the specimens were fabricated and should have been properly investigated, thereby proving HFL intent to deceive the USPTO.

45.     As another alternate and separate reason, the `602 Registration must be cancelled because Defendant misrepresented to the USPTO that it could rely on the IC 35 services as the secondary source to overcome the USPTO's refusal to register the mark in classes 16, 21, 25, 26, and 34, when it knew that its IC 35 application was invalid because it had not provided all of the goods listed on the application or because it knew that its primary service was for the sale of marijuana and marijuana paraphernalia, which service is not entitled to federal registration as it is in violation of the Controlled Substances Act. Applicant concealed information concerning use of the HOTBOX FARMS mark in connection with marketing and sale of unlawful drug paraphernalia, and by concealing the information Defendant misrepresented to the USPTO that the services were being provided lawfully in interstate commerce.

46.     The statements to the USPTO were false, deceptive, and misleading when made, made with the requisite intent to deceive the USPTO, and were relied upon by the USPTO to issue the `602 Registration.

47.     Puff TIW is being competitively harmed by the continued registration of said mark.

**COMPLAINT – Jury Demand**

48. Puff TIW has no adequate remedy at law and will be irreparably harmed unless Defendant's conduct is preliminarily and/or permanently enjoined and the `602 Registration canceled. The Court should also order the registration of Puff TIW's pending applications for the HOTBOX Trademarks listed above.

### THIRD CAUSE OF ACTION
(Trademark Non-Infringement, Invalidity and Unenforceability)

49. Puff TIW refers to the allegations of Paragraphs 1 through 48 of this Complaint and incorporates them as though fully set forth herein.

50. Puff TIW seeks declaratory relief from this Court to prevent Defendant from hindering competition by illicitly monopolizing marks using the term "HOTBOX" when Defendant has illicitly obtained the `602 Registration.

51. Defendant accused Puff TIW of infringing Defendant's alleged trademark rights in HOTBOX FARMS as used for marijuana, under state registrations listed in Exhibit A, and cigarette lighters.

52. Puff TIW seeks a declaratory judgment that its HOTBOX Marks do not infringe on any of Defendant's purported HOTBOX FARMS marks, that Defendant's registrations are invalid, their applications are void, and they have no enforceable trademark rights.

53. Puff TIW has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE Puff TIW prays for judgment against Defendant, and each of them, as follows:

A. That Defendant, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with any of them, be preliminarily and permanently enjoined from:

1) threatening Plaintiffs, their customers, suppliers, distributors, and third parties in concert with them of infringement of any purported HOTBOX FARMS marks;

2) registering with the USPTO any pending or new trademark application containing the term "HOTBOX" as a word mark and/or design mark or any other colorable imitation of Plaintiffs' HOTBOX Marks, including the HOTBOX related word marks and design marks that are likely to cause confusion, mistake, or deception or to impair the distinctiveness of Puff TIW's HOTBOX Marks;

3) unfairly competing with Puff TIW in any manner; and

4) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 1) through 4) above.

B.   For an order finding that, by the acts complained of herein, Defendant has violated Section 1120 by obtaining the `602 Registration through fraud or misrepresentations, which they have used to damage Puff TIW;

C.   For an order awarding, at Puff TIW's election, statutory and/or actual damages, in an amount to be fixed by the Court in accordance with proof, including punitive and exemplary damages as appropriate, as well as all of Defendant's profits or gains of any kind resulting from each cause of action, and further for an order awarding treble damages, pursuant to 15 U.S.C. § 1117(b) or any other applicable statute, because the acts of infringement were willful and wanton;

D.   For an order directing the USPTO to cancel the `602 Registration and to allow the registration of Plaintiffs' pending applications for the HOTBOX Marks;

E.   For an order declaring that Puff TIW does not infringe Defendant's purported rights in any HOTBOX FARMS or HOTBOX marks, Defendant's asserted marks are invalid and/or void, and Defendant's purported marks are unenforceable;

F.   For an order declaring that any use by Puff TIW and/or its licensees of the

COMPLAINT – Jury Demand

HOTBOX Marks does not, and will not, infringe any trademark rights of Defendant's and that Defendant's trademarks are invalid and unenforceable;

G.    For an order finding that an award of pre and post judgment interest is necessary to fully compensate Puff TIW for the damage it has sustained;

H.    For an order awarding Puff TIW relief based on Cal. Civ. Code § 3294;

I.    For an order awarding Puff TIW all of its costs, including its attorneys' fees incurred in prosecuting this action;

J.    Awarding Puff TIW recovery for any unjust enrichment of Defendant; and,

K.    For an order awarding Puff TIW such other and further relief as the Court may deem just and proper.

Dated:  September 22, 2023                 Respectfully submitted,

**MILORD LAW GROUP P.C.**

/s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiffs
TIW HOLDINGS LLC
PUFF LABS LLC

**COMPLAINT – Jury Demand**

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs, through their attorneys of record, hereby demand trial by Jury.

3

4    Dated:  September 22, 2023                    **MILORD LAW GROUP P.C.**

5

6                                                  /s/ Milord A. Keshishian
                                                   Milord A. Keshishian
7                                                  Attorneys for Plaintiffs
                                                   TIW HOLDINGS LLC
8                                                  PUFF LABS LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT – Jury Demand**